UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RICHARD F. RAY, RECEIVER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-CV-49 |
| | ) | |
| CRYSTAL HONEYCUTT, | ) | |
| SEAN MARTIN, | ) | |
| BRYAN ELDER | ) | |
| d/b/a ELDER CATTLE FARMS | ) | |
| and / or ELDER BOY FARMS, | ) | |
| ERNIE ELDER | ) | |
| d/b/a ELDER CATTLE FARMS | ) | |
| and / or ELDER BOY FARMS, | ) | |
| PEOPLE'S BANK AND TRUST | ) | |
| COMPANY OF | ) | |
| PICKETT COUNTY, INC., | ) | |
| PEOPLE'S BANK AND TRUST | ) | |
| COMPANY OF | ) | |
| CLINTON COUNTY, INC., | ) | |
| MIKE GRAY, | ) | |
| KEN NELSON, | ) | |
| DON HODGE, | ) | |
| BOB MARTIN, | ) | |
| MIKE HAGIE, | ) | |
| and | ) | |
| GLENN S. MARTIN, JR. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Richard F. Ray, as Receiver and pursuant to the terms and provisions of the Memorandum

and Order entered on December 20, 2012 in <u>United States of America v. Glenn S. Martin Jr.</u>, United

States District Court, Eastern District of Tennessee at Greeneville, No. 2:93-CV-317  [Doc. 81],

files this petition against Crystal Honeycutt, Sean Martin, Ernie Elder, Bryan Elder d/b/a Elder

Cattle Farm and or Elder Boy Farms, Peoples Bank and Trust of Pickett County, Inc., Peoples Bank and Trust of Clinton County, Inc., Ernie Elder d/b/a Elder Cattle Farm and or Elder Boy Farms, Mike Gray, Ken Nelson, Don Hodge, Bob Martin, Mike Hagie and Glenn S. Martin Jr. For the basis of the claim, the Receiver states the following:

## I. Introduction

1.      The original matter was initiated by the United States of America against Glenn S. Martin Jr., which resulted in a judgment of $1,791,727.27 plus interest and surcharges for violations of the federal tobacco program.[1] The case is styled <u>United States of America v. Glenn S. Martin Jr.</u>, United States District Court, Eastern District of Tennessee at Greeneville, No. 2:93-CV-317.

2.      On December 22, 2012, the Honorable J. Ronnie Greer issued an Order appointing Richard F. Ray as the receiver in this matter. <u>Id</u>., [Doc. 81].

3.      Pursuant to this order, the receiver was charged with the duties to "assume control, investigate the financial affairs, and liquidate the non-exempt assets of the defendant."

4.      The appointing order also issued a temporary restraining order on Glenn S. Martin, Jr. preventing him from "selling, transferring, encumbering, giving away, hiding, secreting, destroying, damaging, dissipating, or in any way diminishing the value of any non-exempt assets owned by [Mr. Martin], whether held in his name or the name of another."

## II. Parties

5.      Crystal Honeycutt is a resident of the state of Tennessee, with a primary place of residence at 429 Peachtree St., Johnson City, TN 37601.

6.      Sean Martin is a resident of the state of Tennessee, with a primary place of residence at 429 Peachtree St., Johnson City, TN 37601.

7.      Ernie Elder is a resident of the state of Tennessee, with a primary place of residence at 109 Bob Elder Lane, Byrdstown, TN 38549. It is also believed that Ernie Elder conducts

business as Elder Cattle Farm and / or Elder Boy Farms which has a mailing address of PO Box 153, Byrdstown, TN 38549.

8.      Bryan Elder is a resident of the state of Tennessee, with a primary place of residence at 109 Bob Elder Lane, Byrdstown, TN 38549. It is also believed that Bryan Elder conducts business as Elder Cattle Farm and/or Elder Boys Farms, 1012 Kenny Elder Lane, Byrdstown, TN.

9.      People's Bank and Trust of Pickett County, Inc. is a Tennessee corporation which may be served with process on its registered agent, James Elder, 19 Courthouse Square Byrdstown, TN 38549.

10.     People's Bank and Trust of Clinton County, Inc. is a Kentucky Corporation which may be served with process on its registered agent, Michael Officer, 403 N. Cross Street Albany, KY 42602.

11.     Mike Gray is a resident of the state of Tennessee, with a primary place of residence at 1745 Horse Creek Park Rd., Chuckey, Tennessee 37641.

12.     Ken Nelson is a resident of the state of Tennessee, with a primary residence of 2796 Old SR 34, Limestone, TN 37681.

13.     Don Hodge is a resident of the state of Tennessee, a primary residence of 105 Gravel Hill Rd., Limestone, TN 37681.

14.     Bob Martin is a resident of the state of Virginia, with a primary residence of 1293 Little Cub Rd., Pamplin, VA 23958-3840. Bob Martin is also the son of Glenn S. Martin, Jr.

15.     Glenn S. Martin, Jr. (hereinafter "Martin" or "Defendant") is a resident of the state of Tennessee. He is currently incarcerated at United States Penitentiary McCreary, and may be served with process at 330 Federal Way, Pine Knot Kentucky.

---

[1] However, as the Court has noted previously, this judgment has grown to over 5 million dollars due Glenn S. Martin Jr's. failure to make payments on the underlying judgment.

Case 2:16-cv-00049-JRG-MCLC   Document 1   Filed 03/10/16   Page 3 of 27   PageID #: 3

16.     Mike Hagie is a resident of the state of Tennessee with a primary residence of 3681 Old State Route 34 34, Limestone Tennessee 37681-2709.

### III. Jurisdiction and Venue

17.     As this matter deals exclusively with property that is subject to the Court's previously entered receivership order in United States of America v. Glenn S. Martin Jr., United States District Court, Eastern District of Tennessee at Greeneville, No. 2:93-CV-317 [Doc. 81] , the receiver is vested with complete jurisdiction and control of all such property under 28 U.S.C. § 754.

18.     As a result, venue and jurisdiction are proper before this court.

### IV. Facts

### IV A. Prison Recordings

19.     On or about December 31, 2008, Glenn S. Martin Jr., filed for Chapter 11 Bankruptcy relief.   Richard F. Ray was appointed as Chapter 11 Trustee on March 2, 2009,

20.     The case was converted to a Chapter 7 on June 17, 2010, and Richard F. Ray continued as Chapter 7 trustee.

21.     During the course of the bankruptcy, Richard F. Ray, serving as bankruptcy  trustee, uncovered evidence that Glenn S. Martin Jr. engaged in crop insurance fraud, and a scheme to hide assets from the bankruptcy proceeding.

22.     In a related adversary matter, Richard F. Ray, serving as bankruptcy trustee, obtained a judgment against Crystal Honeycutt for $414,047.90 due to her efforts to hide assets that belonged to Glenn S. Martin, Jr. See Attached Exhibit 1.

23.     Following these revelations, Glenn S. Martin Jr. was charged with Conspiracy to Defraud the United States, concealment of property during a bankruptcy, and making false or fraudulent claims. See Attached Exhibit 2.

4

24.     Glenn S. Martin Jr. eventually pled guilty to Conspiracy to commit crop land loss insurance fraud, and concealment of property during a bankruptcy proceeding. See Attached Exhibit 3.

25.     Glenn S. Martin Jr. was sentenced to be imprisoned for a 51 month term. Id.

26.     Glenn S. Martin Jr. was imprisoned at the United States Penitentiary, McCreary (hereinafter USP McCreary) located at 330 Federal Way, Pine Knot Kentucky. Mr. Martin's incarceration began sometime in July of 2014. Upon information and belief, Mr. Martin is still an inmate at USP McCreary at the time of this filing.

27.     Although the receiver had managed to seize and process many non-exempt assets of Glenn S. Martin Jr., questions remained as to whether or not there were still non-exempt assets in Mr. Martin's possession or control. See Attached Exhibit 4, Paragraph 4.

28.     These suspicions were confirmed on September 5, 2014, when the deposition of Rose Honeycutt[2] was taken. During the course of the deposition, it was revealed by Ms. Honeycutt that Glenn S. Martin Jr. had given her a Cadillac Escalade prior to his incarceration in violation of this court's restraining order.[3] Id, Paragraphs 5-9.

29.     Following this revelation, the receiver requested from the United States Attorney's Office copies of telephone recordings made by Glenn S. Martin Jr. from USP McCreary. Id, Paragraphs 10-12.

30.     The United States Attorney's Office eventually turned over three separate volumes of recordings to the receiver, consisting of phone calls from June 26, 2014 through October 8, 2015.[4] Id.

31.     As discussed more thoroughly below, the recordings revealed a conspiracy between all of the named parties to hide and sell assets of Glenn S. Martin Jr., for his benefit.

### IV B. 2004 Mini Cooper

---

[2] Rose Honeycutt is the mother of Crystal Honeycutt, and is believed to be a paramour of Glenn S. Martin Jr.
[3] The Cadillac Escalade was surrendered to the receiver and sold for the benefit of the receivership.
[4] The receiver's review and investigation of these recordings have been previously listed as "defendant's confidential files" or 'review of evidence' in the submitted monthly activity reports.

32.     The receiver incorporates by reference paragraphs 1 – 31.

33.     Prior to his appointment as receiver, Richard F. Ray in his capacity as bankruptcy trustee obtained a judgment against Crystal Honeycutt. <u>See Attached Exhibit 1.</u>

34.     During Richard F. Ray's investigation of Crystal Honeycutt, he learned that she owned a 2004 Mini Cooper which was financed by People's Bank and Trust of Pickett County, Inc. <u>See Attached Exhibit 4</u>, Paragraph 16.

35.     Mr. Ray notified Bruce Elder who was serving as president of People's Bank and Trust of Pickett County, Inc., of his intention to seize the Mini Cooper, satisfy the bank lien, and apply the balance to the judgment. <u>Id</u>, Paragraph 17.

36.     Shortly after that notification, Mr. Ray was notified that People's Bank and Trust Company of Pickett County, Inc., Peoples Bank and Trust Company of Clinton County, Inc., or its agent(s) had re-possessed the 2004 Mini Cooper. <u>Id</u>, Paragraph 18.

37.     Unknown to Mr. Ray at the time of the repossession was that this was part of a scheme to hide the 2004 Mini Cooper from Mr. Ray in his capacity as bankruptcy trustee, and was at Glenn S. Martin, Jr's direction and was paid for with appropriated assets that belonged to the receivership. <u>Id</u>, Paragraph 19.

38.     Specifically, Glenn S. Martin, Jr. directed Ernie and Bryan Elder to repossess the 2004 Mini Cooper and re-title the vehicle to Sean Martin.[5] <u>See Attached Exhibit 4</u>, Paragraph 20<u>; See Attached Exhibit 5</u>.

39.     With respect to the prison calls, the scheme was explained to Crystal Honeycutt by Glenn Martin, Jr. on June 30, 2014.

40.     In that phone call, Martin explained "Ernie's going to get your car back and he's going to pay for it." <u>See Attached Exhibit 6</u>, Lines 13-14.

---

[5] It is the receiver's allegation that Sean Martin is a paramour of Crystal Honeycutt, and is of no relation to Glenn S. Martin, Jr.

41.     On July 13, 2014 Martin instructed Crystal Honeycutt to contact Bryan Elder to pick up the vehicle.

42.     On July 15, 2014 Glenn S. Martin Jr. informed Crystal Honeycutt that there would be a delay in picking up the vehicle, as "Bryan said that was going to be a couple more days because he was having to have some paperwork changed round so that, uh, Dick Ray [6] couldn't take it." See Attached Exhibit 7, Lines 13-14.

43.     Later phone calls between Glenn S. Martin, Jr. and Ernie and Bryan Elder shed light on the process of seizing and paying for the vehicle.

44.     On September 7, 2014 and June 29, 2014, Ernie Elder and Glenn S. Martin discussed how they would pay for the 2004 Mini Cooper. Mr. Martin Directed the Elders "[j]ust sell what you want to sell." See Attached Exhibit 8, Line 73. See Also Lines 71-79. Glenn S. Martin Jr. also instructed Ernie Elder sell assets to pay off the loan on Crystal Honeycutt's car. See Attached Exhibit 9, Lines 33-46 & 69-73.

45.     On November 9, 2014, prison calls between Bryan Elder and Glenn S. Martin Jr. reveal that the loan on the 2004 Mini Cooper was satisfied by cash proceeds from the sale of Defendant assets in possession of Bryan Elder. See Attached Exhibit 10., Lines 20-21, 84-111, 126-133.

46.     The fraudulent scheme was completed at the end of 2014. On October 18, 2014 Ernie Elder told the Defendant "the car is situated." See Attached Exhibit 16, L. 50. In an additional call on November 9, 2014, Bryan Elder stated "I'm going to have it sold to her cheap. That way it don't show anything up." See Attached Exhibit 10, L. 108-110.

47.     On or about July 14, 2014 the receiver caused a deposition of Crystal Honeycutt to occur in order to determine whether or not she was hiding any assets belonging to Glenn S. Martin Jr. See Attached Exhibit 4, Paragraph 8.

---

[6] Richard F. Ray goes by the common nickname of Dick.

48.     When questioned about the 2004 Mini Cooper, she denied having possession of it and did not disclose the conspiracy. See Attached Exhibit 11. P. 19-20, L. 17-25 & 1-20; P. 58, L11-23; P.84, L6-15.

49.     At all times relevant to the transfer of the 2004 Mini Cooper to Shawn Martin, Ernie Elder was the President and Bryan Elder was an employee of People's Bank and Trust of Pickett County, Inc., and / or People's Bank and Trust of Clinton County, Inc.

50.     They used their positions as bank officers or employees to hide and sell assets of Glenn S. Martin Jr. that were subject to the Court's receivership order to frustrate Richard F. Ray's attempts to execute on the 2004 Mini Cooper in his duties as Chapter 7 trustee.

51.     As a result, People's Bank and Trust of Pickett County, Inc., and People's Bank and Trust of Clinton County, Inc. are vicariously liable for their employees' behavior.

52.     The receiver believes that $14,289.72 of receivership assets was diverted to further the scheme of Glenn S. Martin Jr. to hide the 2004 Mini Cooper from Richard F. Ray. See Attached Exhibit 4, Paragraph 20.


## IV C. Massey Harris Tractor and Diverted Farm Equipment


53.     The receiver incorporates by reference paragraphs 1 – 52.

54.     At the start of the receivership, Bryan Elder filed two claims for various farm equipment and motor vehicles that were in the possession of the receiver. See Attached Exhibit 12. The Polk Auction Invoice was dated September 15, 2010 and included a Massey Harris 203 Tractor marked "in shop" and supporting Bryan Elder's second claim.   Bryan Elder's second claim added more equipment, each supported by the Polk Auction Invoice dated September 15, 2010.

55.     Bryan Elder's second claim was submitted by email on October 17, 2013 to Richard F. Ray.  The claim added equipment supported by a Polk Auction invoice and further description by Bryan Elder attached to the claim. Bryan Elder's second claim was an amendment to his initial claim.  His second claim included two Massey Harris tractors, two Oliver tractors, two International

8

Harvester Farmall Tractors and an International Harvester Grain Truck. Id. Bryan Elder submitted a Polk Auction Sale Bill dated September 15, 2010 indicating the sale price had been $4,600.00. Id.

56.     At the time that the receiver received these claims, the Massey Harris 203 was disassembled in a garage occupied by Glenn S. Martin, Jr. See Attached Exhibit 4, Paragraph 25.

57.     Based upon the claims of Bryan Elder, the receiver allowed Bryan Elder to take possession of the Massey Harris 203 tractor. Id.

58.     On October 4, 2014 representatives of the receiver inspected the vacated residence of the Defendant and discovered the same Massey Harris[7] along with six other tractors in the basement. Id, Paragraph 29.

59.     Based upon the receiver's investigation, it is believed that although the residence was owned by Robert Tucker of Virginia, Mr. Tucker allowed Glenn S. Martin Jr. to live there rent free prior to his incarceration. Id, Paragraph 27.

60.     Following this discovery, Mr. Ray contacted Bryan Elder. Bryan Elder disavowed knowledge of the tractor being at Glenn S. Martin, Jr's residence, but reaffirmed his ownership of the tractor. Based upon Bryan Elders renewed certification that the tractor was indeed his, the receiver allowed Bryan Elder to repossess the tractor. Id, Paragraph 30.

61.     The afore mentioned prison calls have cast doubt upon not only the Massey Harris tractor, but upon Bryan Elder's claims as a whole.

62.     In a telephone conversation that occurred on October 18, 2014, Glenn S. Martin Jr. directed Bryan Elder to sell the Massey Harris to Polk Auction See Attached Exhibit 13, L. 64-69.

63.     Specifically, Glenn S. Martin Jr. instructed Bryan Elder to tell Mr. Polk that you bought the 202 [Massey] from him. Mr. Polk thought it was a 203, which was not worth as much. Id., L. 70-78.

64.     On or about September 7, 2014 Glenn S. Martin Jr. instructed Bryan Elder to sell the tractors See Attached Exhibit 8, L 85-90. This sale is to pay for the 2004 Mini Cooper referenced in § IV B above.

---

[7] At the time of discovery, the tractor had been assembled.

65.     The Oliver tractors at issue had been previously claimed by Bryan Elder in his claim or had been purchased from the Receiver's auction. See Attached Exhibit 4, Paragraph 31.

66.     On or about September 12, 2014, a prison call from Glenn S. Martin Jr. to Ernie Elder revealed that Bryan Elder sold a Miller disc for $2,000.00 to Mike Gray. See Attached Exhibit 14, L. 27-50. It is further alleged that this Miller disc was sold for the benefit of Glenn S. Martin, Jr.

67.     A similar Miller disc was taken into the receiver's control in April of 2013, but came up missing prior to the receiver's auction. See Attached Exhibit 4, Paragraph 32.

68.     On November 23, 2014 Bryan Elder told Glenn S. Martin Jr. that he took the Hi-Clear International to Elder's house. See Attached Exhibit 15, L. 135-136. Martin further told Elder "get that on EBAY it'll bring some money" Id, L. 135-140.

69.     On May 10, 2015 Glenn S. Martin Jr. called Ernie Elder and discussed a "Lilleston Bush Hog sod Drill." See Attached Exhibit 17, L. 58-62.

70.     During that call, Glenn S. Martin Jr. told Ernie Elder "I put a new disc on it in 13, y'all took it to your place." Id., L. 58-61. He further informed Ernie Elder "it had Bryan's name on it." Id., L. 89.

71.     On May 30, 2015 Glenn S. Martin Jr. initiated a phone call to Bryan Elder stating Mike Gray used the Bush hog drill last year.  He also stated that it has Bryan Elder's name across the front of it, and it came from London Ohio. See Attached Exhibit 18, L. 45 & 64-71.

72.     Bryan Elder claimed a Bush Hog 9690 Drill purchased from Tri-Green Interstate Equipment, Inc., London Ohio on August 25, 2011. See Attached Exhibit 12.

73.     Based upon the prison calls, Glenn S. Martin Jr. exercised domain and control over the Massey tractor at issue, as well as the items referenced in the Bryan Elder claim previously filed with the receiver.

74.     The receiver was not aware of the deception until he reviewed the prison recordings, at which time the fraudulent scheme was realized.  See Attached Exhibit 4.

75.     Additionally, Bryan Elder's claim included a Case International Harvester 4586 valued at $6,200.00. See Attached Exhibit 12.

76.     A photograph of what is believed to the Case International Harvester 4586 taken at the Keebler road farm is attached as Exhibit 19.

77.     On May 10, 2015 Glenn S. Martin Jr. called Ernie Elder from prison. During that phone call, Ernie advised that Bryan Elder "called that uh, boy about the trailer. Get that tractor loaded. . . take it to a place and let 'em go ahead put a clutch in it." See Attached Exhibit 17, L. 132-133.

78.     Ernie Elder further advised Glenn S. Martin Jr. "it would be something you could sell when you got out." Id., L. 137.

79.     The receiver further alleges that the entirety of Bryan Elder's claims is fraudulent, and he is holding these assets for the benefit of Glenn S. Martin Jr.

80.     The receiver believes that the totality of these claims is valued at $53,050. See Attached Exhibit 4, Paragraph 34.


**IV D. Diverted Farming Tractors**


81.     The receiver incorporates by reference paragraphs 1 – 80.

82.     The receiver's investigation also revealed that as part of the alleged conspiracy, Ken Nelson is hiding an International 1206 tractor for Martin's use after he is released from prison.

83.     On August 31, 2014 Glenn S. Martin made a call to Ken Nelson from USP McCreary.

84.     During that phone call, Glenn S. Martin Jr. informed Ken Nelson that "the 1206 is at the barn" and that Mr. Nelson should take the tractor to his house. See Attached Exhibit 20, L. 58 & L. 61-62.

85.     Mr. Nelson responded by stating that he would take the tractor and "I'm gonna hold on to it 'til you get back." Id., L.77. See Also L. 68-72 & L. 78-82.

86.     The receiver alleges that this conversation was part of the on-going conspiracy to hide the non-exempt assets of Glenn S. Martin, Jr.

87.     The receiver further alleges that Ken Nelson is holding in his possession non-exempt assets that belong to Glenn S. Martin Jr., and are part of the receivership. The receiver believes this tractor is worth $8,000.00. See Attached Exhibit 4, Paragraph 37. The receiver further alleges that Ken Nelson is fraudulently holding this tractor for the benefit of Glenn S. Martin Jr.

88.     Mr. Nelson was aware of the existence of the receivership and had previously submitted claims for farm equipment held by Glenn S. Martin Jr.. Mr. Nelson also participated as fact witness in the claims of Victoria Fellers. [Doc. 111], See Attached Exhibit 4, Paragraph 35.


## IV E. Road Tractors

89.     The receiver incorporates by reference paragraphs 1 – 88.

90.     The receiver's investigation also uncovered a scheme by Glenn S. Martin, Jr., Don Hodge, and Mike Gray whereby they attempted to hide four semi-trucks or road tractors. These trucks are:

      a. 1989 Blue Peterbilt, VIN 270161

      b. Red Mack Truck RW713 VIN 02395

      c. 1988 Western Star VIN 24527

      d. 1988 Gray Peterbilt parts truck, VIN 73085

91.     The receiver first became aware of this part of Glenn S. Martin Jr's scheme when he reviewed the aforementioned recorded prison calls. Two of trucks were initially claimed by Don Hodge at the start of the receivership. See Attached Exhibit 21. All four trucks were later claimed by Don Hodge via an amended claim. Id.

92.     On or about July 7, 2014, Glenn S. Martin Jr. called Don Hodge from USP McCreary.

93.     In this phone call, Hodge reported to Glenn S. Martin Jr. that he had an offer to purchase the "blue truck" for $8,500.00. See Attached Exhibit 22, L. 63-71 & L. 87.

94.     In that call, Glenn S. Martin Jr. also instructed Hodge to "give Crystal [Honeycutt] two." Id., L. 46-47 & 81-82.

12

95.     On the same day, Glenn S. Martin Jr. called Mike Gray and instructed him that Don Hodge would get "the Blue [truck] on the corner." See Attached Exhibit 23, L. 11.  The 1989 Peterbilt *70161 is the only blue truck in this group. See Attached Exhibit 4, Paragraph 40.

96.     During the same call, Glenn S. Martin Jr. asked that Gray to be patient and that the other trucks stored at Keebler Farms are a "Community Project." Id., L. 9-11; 19-20; 73; & 116-117.

97.     On December 30, 2014, Don Hodge reported to Glenn S. Martin Jr. that he was getting $8,000.00 for the blue truck. See Attached Exhibit 24, L. 96-102.

98.     On July 25, Glenn S. Martin Jr. instructed Hodge to sell the "gray truck with no front end" for $3,000.00 cash. See Attached Exhibit 25, L25-36. The 1988 Peterbilt Parts Truck is the only gray truck in this group.

99.     As a result of the Defendants' actions, some of these trucks were stolen or pilfered for parts. See Attached Exhibit 4, Paragraph 43.

100.    On January 6, 2015 Hodge reported to Glenn S. Martin Jr. that Hagie got the Mack truck for parts.[8] See Attached Exhibit 27, L 20-26.

101.    The phone calls evidence that Don Hodge eventually settled up with Hagie for the stolen truck. On February 3, 2015 Hodge reported to Glenn S. Martin Jr. that Mike Hagie would pay him for the truck, but not if he knew the trucks were actually Martins' See Attached Exhibit 27., L. 92-108.

102.    On the same phone call, Glenn S. Martin Jr. reminded Hodge "it's all signed up with Dick Ray." Id., L. 109.

103.    During the same phone call, Hodge also reported to Glenn S. Martin Jr. that the Western Star road tractor was being pilfered for parts. Id., L. 116-123.

104.    On or about August 28, 2015, the receiver took the deposition of Don Hodge and Mike Gray with respect to locating these missing trucks. See Attached Exhibit 4, Paragraph 44.

---

[8] The receiver believes that this references a Mike Hagie, who was a former business associate of Glenn Martin, and a co-defendant in this case

105.     During his deposition, Mike Gray testified that the 1989 Western Star VIN 24527 and 1989 Peterbilt VIN 73085 belonged to Glenn S. Martin, Jr. See Attached Exhibit 28, P. 16-17, L. 14-25 & 1-11.

106.     During Donald Hodge's deposition, he was confronted with the information contained in the prison recordings. As a result, he turned over the 1989 Western Star VIN 24527 and 1989 Peterbilt VIN 73085 to the receiver, which was eventually sold for $4,000.00. See Attached Exhibit 4, Paragraph 44. [Docs. 275, 283].

107.     The red Mack truck and Blue Peterbilt truck have not been recovered. Id, Paragraph 43 & 46.  In his deposition, Hodge testified that he sold the Blue Peterbilt to "Morrow" in January 2015.  Examination of his bank statements confirms a deposit of $8,000.15 in January 2015, followed by three checks written to Cash totaling $6,900 in January. Id.

108.     Further, the recovered 1989 Western Star exhibited significant frame damage and deterioration. Id, Paragraph 45.

109.     The receiver alleges that the value of the trucks at issue is $25,000.00. Id
.

## IV F. Trailers

110.     The receiver incorporates by reference paragraphs 1 – 109.

111.     At the time of the creation of the receivership on December 20, 2012, the receiver came into the possession of two large trailers. The first is a detachable trailer See Attached Exhibit 29, and the second was a Drop Deck Trailer. See Attached Exhibit 30.

112.     At some time after the creation of the receivership, the detachable trailer disappeared. See Attached Exhibit 4, Paragraphs 48-50.  The detachable trailer was disclosed by Glenn S. Martin Jr., in the "Debtor's Second Amendment to Voluntary Petition Scheduled Assets & Liabilities & Statement of Financial Affairs" entered February 25, 2009, as "35 ton detached trailer with a value of approximately $20,000.  It is encumbered by a security interest in favor of People's Bank and Trust Company".  Peoples Bank and Trust Company, Inc. agreed its secured claim was

14

satisfied on September 30, 2010 by payment from the bankruptcy estate of $402,823.56. That payment was accepted by Ernie Elder, then bank President. Id.

113.    Richard F Ray, as receiver released the drop deck trailer to Bob Martin, based upon representations from him that the trailer was his property, and did not belong to Glenn S. Martin, Jr. Id, Paragraph 51.

114.    On March 1, 2015, Glenn S. Martin Jr. called Ernie Elder. During that phone conversation, Elder discussed with Martin the possibility of purchasing a trailer from Martin. See Attached Exhibit 31, L. 70-73.

115.    Glenn S. Martin Jr. informed Elder that "you've [Elder] got the title." Id., L. 72.

116.    Glenn S. Martin Jr. then instructed Elder that the 'Ricker' boys have the trailer, and that there is a tractor sitting on the trailer. Id., L.70-77 & L. 92-94.

117.    Later on in a phone call to Bryan Elder, Glenn S. Martin Jr. specifically identified the fact that 'Ricker' has the detached trailer, a tractor on it, and a drop deck trailer." See Attached 32, L. 12-16 & L. 115[9].

118.    Based upon this information, the receiver caused depositions to occur of Arthur Ricker, Ryan Ricker, and Brennan Ricker.[10] See Attached Exhibit 4, Paragraph 53.

119.    Brennan Ricker testified that at some point prior to Glenn S. Martin Jr's incarceration, Mr. Martin allowed him to remove from the Keebler Road farm a detached trailer with a tractor on it and a drop deck trailer. See Attached Exhibit 33. P. 45, L. 23-25; P. 46, L. 1-8, P. 72 L. 18-25; & P. 73 L. 1-17.

120.    Brennan Ricker and Bryan Ricker also separately testified that Bryan Elder came on their property and took the detached trailer and tractor. The drop deck trailer was left in the care of Brennan Ricker. Id., P. 42, L. 1-5; P. 44, L. 1-17; P. 45, L. 11-22; P. 48, L. 18-25; P. 49, L. 1-16.

_____

[9] Following his investigation of the Rickers, the receiver is satisfied that the tractor referenced in the prison call is not in their custody.
[10] The information gathered showed that all of the Rickers are involved in tobacco farming, and had previous business dealings with Glenn S. Martin, Jr.

See Attached Exhibit 34, P. 17, L. 17-25; P. 18, L. 9-25; P. 19, L. 1-5; P. 88, L. 21-25; & P. 89, L. 1-12.

121.     The receiver believes that a third trailer is in Ernie Elder's possession and is actually owned by Glenn S. Martin Jr.. It is further believed this is a 40 foot trailer. See Attached Exhibit 4.

122.     The receiver conducted an investigation into the ownership of the drop deck trailer prior to selling it. Bob Martin continues to assert an ownership interest in the trailer, which is contradicted by both the Defendant's recorded conversations and the evidence so gathered. See Attached Exhibit 4, Paragraph 59. See Attached Exhibit 32, L. 108-115

123.     As a result, the receiver is holding the drop deck trailer in secure storage until the resolution of this matter. See Attached Exhibit 4, Paragraph 57.

124.     On a June 20, 2015 phone call, Ernie Elder advised Glenn S. Martin Jr. that he has possession of the tractor and trailer. See Attached Exhibit 35, L. 30-32 & 77-91.

125.     Glenn S. Martin Jr. further advised Ernie Elder to run a Virginia tag on the trailer. Id., L 110-118. Ernie Elder he had a new Tennessee tag to run on it. Id., L. 190.

126.     Glenn S. Martin Jr. further advised Ernie Elder to not leave the tag on the trailer unless it was on the road "because of Mr. Ray." Id., L. 120-121. Martin further advised for Ernie Elder to put the Illinois tag on the trailer to run legal. Id., L. 131-132.

127.     The receiver alleges that the tag was placed on the detached trailer for the express purpose of transporting the trailer to Ernie Elder's farm, and the tag removed to hide the trailer from Mr. Ray's investigation. The receiver further alleges that Mike Gray was holding the tag for Glenn S. Martin Jr.. See Attached Exhibit 4, Paragraph 58.

128.     Upon being confronted by the receiver with evidence that the drop deck trailer had belonged to Glenn S. Martin Jr., Brennan Ricker turned over the trailer to the receiver. See Attached Exhibit 4, Paragraph 56.

129.     During the June 20, 2015 conversation, Glenn S. Martin Jr. and Elder revealed that they had possession of a third trailer. Id., L. 125-130.

130.    The trustee believes that the value of the drop deck and detachable trailer is $30,000.00. The receiver does not have an opinion about the value of the 40 foot tractor at this time. See Attached Exhibit 4, Paragraph 60.

131.    At all times relevant to the conversion of the drop deck trailer by Ernie Elder, Ernie Elder and Bryan Elder were employees of People's Bank and Trust of Pickett County, Inc., and / or People's Bank and Trust of Clinton County, Inc.

132.    They used their positions as bank employees to hide this assets of Glenn S. Martin Jr. and to keep it for their own use, in violation of this Court's previous order creating the receivership.

133.    As a result, People's Bank and Trust of Pickett County, Inc., and People's Bank and Trust of Clinton County, Inc. are vicariously liable for their employees' behavior.

## IV G. Articulating Tractors & Offset Discs.

134.    The receiver incorporates by reference paragraphs 1 – 133.

135.    While the receiver was serving as Bankruptcy trustee in the Defendant's bankruptcy, he validated the Debtor's list of farm equipment under the debtor's control, based on the Debtor's Schedule of Equipment filed January 28, 2009. See Attached Exhibit 4, Paragraph 61 - 62

136.    Included on that list were two large International Harvester articulating tractors:

    a.      Model 9170 S/N JCB0001957

    b.      Model 9150 S/N JCB0006715 Id.

137.    Also included on that list were five International Harvester Offset Discs. Only two had serial numbers:

    a.      IH 780 Offset Disc 12ft, S/N UO14570

    b.      IH 770 Offset Disc 16ft, S/N UO21152 Id.

138.    These items disappeared days after Mr. Ray's appointment as trustee, and have never resurfaced. Id, Paragraph 63.

139.    Mike Hagie, Bob Martin, and Glenn S. Martin Jr. have conspired to hide these assets from the receiver.

140.    On December 21, 2014, Glenn S. Martin Jr. called Bob Martin from USP McCreary prison.

141.    During this phone call, Glenn S. Martin Jr. stated that he had tractors to send to Bob Martin. See Attached Exhibit 36. L. 120-123, & 128-131.

142.    The defendant identified these tractors as "a 9150, 770 and 780 disc." Id.

143.    He also stated that he had done some trading with Mike Hagie. Id.

144.    The receiver values the known missing items at $90,000.00.


## V. Counts

## Count 1: Fraud

145.    The receiver incorporates by reference paragraphs 1 – 144.

146.    Based upon the facts stated above, Glenn S. Martin Jr., Bryan Elder, Ernie Elder, Sean Martin, and Crystal Honeycutt did participate in a scheme where they intentionally misrepresented a material fact to Richard F. Ray, namely that the 2004 Mini Cooper was being lawfully repossessed by People's Bank of Pickett County, Inc.

147.    Glenn S. Martin Jr., Bryan Elder, Ernie Elder, Sean Martin, and Crystal Honeycutt did know that representations made to Richard F. Ray were false.

148.    As a result, Richard F. Ray did not pursue execution on the 2004 Mini Cooper believing that it was being lawfully repossessed.

149.    The misrepresentation of the repossession was a past or existing fact at the time the representation was made.

150.    As Ernie Elder and Bryan Elder were employees of People's Bank and Trust of Pickett County, Inc., and People's Bank and Trust of Clinton County, Inc. at the time the misrepresentation were made and were acting in the course and scope of their employment at the time the fraud was committed, People's Bank and Trust of Pickett County, Inc., and People's Bank and Trust of Clinton County, Inc. are vicariously liable for their employees actions.

## Count 2: Conversion

151.    The receiver incorporates by reference paragraphs 1 – 150.

152.    Based upon the facts stated above, Glenn S. Martin Jr., Bryan Elder, Ernie Elder, Sean Martin, and Crystal Honeycutt did appropriate assets of the receivership in order to complete their fraudulent actions discussed in Count 1 above.

153.    The misappropriation of receivership assets was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

154.    As Ernie Elder and Bryan Elder were employees of People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc.at the time the conversion of receivership assets were made and were acting in the course and scope of their employment at the time the fraud was committed, People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc. is vicariously liable for their employees actions.

## Count 3: Fraud

155.    The receiver incorporates by reference paragraphs 1 – 154.

156.    Bryan Elder did intentionally misrepresent his ownership interest in the items submitted to the receiver as identified in Exhibit 10.

157.    Bryan Elder did state that he was the owner of the items of personal property at issue, while Glenn S. Martin Jr. was exercising domain and control over the property.

158.    Bryan Elder did know that his claim was false.

159.    The receivership was injured due to the fact that the receiver allowed Bryan Elder to maintain possession of the items of personal property identified in Exhibit 11.

160.    The misrepresentation of ownership was an existing fact at the time it was made.

## Count 4: Fraud

161.    The receiver incorporates by reference paragraphs 1 – 160.

162.    Don Hodge did intentionally misrepresent his ownership interest in the items submitted to the receiver as identified in Exhibit 23.

163.    Don Hodge did state that he was the owner of the items of personal property at issue, while Glenn S. Martin Jr. was exercising domain and control over the property.

164.    Don Hodge did know that his claim was false.

165.    The receivership was injured due to the fact that the receiver allowed Don Hodge to maintain possession of the items of personal property identified in Exhibit 23.

166.    The misrepresentation of ownership was an existing fact at the time it was made.

### Count 5: Conversion

167.    The receiver incorporates by reference paragraphs 1 – 166.

168.    Bryan Elder did appropriate assets that belonged to the receivership, namely the items of personal property identified in Exhibit 12.

169.    The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

### Count 6: Conversion

170.    The receiver incorporates by reference paragraphs 1 – 169.

171.    Ernie Elder and Mike Gray did appropriate a Miller Disc that belonged to the receivership.

172.    The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

### Count 7: Trespass to Personalty

173.    The receiver incorporates by reference paragraphs 1 – 172.

174.    Ernie Elder and Mike Gray did take possession of a Miller Disc that belonged to the receivership.

175.    This actual and exclusive possession of the Miller Disc interfered with the receivership's lawful right to the Miller Disc and constituted a trespass to personalty.

### Count 8: Conversion

176.    The receiver incorporates by reference paragraphs 1 – 175.

177.     Ernie Elder and Bryan Elder did appropriate a Hi-Clear International, Bush Hog drill, and other pieces of equipment identified in the "Brian Elder Claim" attached as Exhibit 12 to the Complaint. The receiver alleges that these items are actually property of the receivership. .

178.     The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

### Count 9: Trespass to Personalty

179.     The receiver incorporates by reference paragraphs 1 – 178.

180.     Ernie Elder and Bryan Elder did take possession of a Hi-Clear International that belonged to the receivership.

181.     This actual and exclusive possession of the Hi-Clear International interfered with the receivership's lawful right to the Hi-Clear International and constituted a trespass to personalty.

### Count 10: Conversion

182.     The receiver incorporates by reference paragraphs 1 – 181.

183.     Glenn S. Martin, Jr. and Ken Nelson did appropriate an International 1206 tractor that belonged to the receivership.

184.     The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

### Count 11: Trespass to Personalty

185.     The receiver incorporates by reference paragraphs 1 – 184.

186.     Glenn S. Martin, Jr. and Ken Nelson did take possession of an International 1206 that belonged to the receivership.

187.     This actual and exclusive possession of the International 1206 interfered with the receivership's lawful right to the International 1206 and constituted a trespass to personalty.

### Count 12: Conversion

188.     The receiver incorporates by reference paragraphs 1 – 187.

189.     Glenn S. Martin Jr., Don Hodge, Mike Hagie, and Mike Gray did appropriate the following road tractors that belonged to the receivership:

a. 1989 Blue Peterbilt, VIN 270161

b. Red Mack Truck RW713 VIN 02395

c. 1988 Western Star VIN 24527

d. 1988 Gray Peterbilt parts truck, VIN 73085

190.    The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

## Count 13: Trespass to Personalty

191.    The receiver incorporates by reference paragraphs 1 – 190.

192.    Glenn S. Martin, Jr., Don Hodge, Mike Hagie and Mike Gray did take possession of the following road tractors that belonged to the receivership:

a. 1989 Blue Peterbilt, VIN 270161

b. Red Mack Truck RW713 VIN 02395

c. 1988 Western Star VIN 24527

d. 1988 Gray Peterbilt parts truck, VIN 73085

193.    This actual and exclusive possession of the road tractors listed above interfered with the receivership's lawful right to them and constituted a trespass to personalty.

194.    Upon information and belief, as a result of the defendant's trespass, some of these road tractors were damaged or stolen diminishing their potential sale value.

## Count 14: Conversion

195.    The receiver incorporates by reference paragraphs 1 – 194.

196.    Glenn S. Martin Jr., Ernie Elder and Bryan Elder did appropriate a detachable trailer, tractor, and a drop deck trailer, and 40 foot trailer that are assets of the receivership.   Ernie Elder in his capacity of President of Peoples Bank and Trust of Pickett County, Inc. knew that the bank had no valid claim on the detached trailer at the time he took instructions from Glenn S Martin that he, "held the title" of the trailer.

197.    The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

198.     As Ernie Elder and Bryan Elder were employees of People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc. at the time the conversion of receivership assets were made, People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc., is vicariously liable for their employees actions.

## Count 15: Trespass to Personalty

199.     The receiver incorporates by reference paragraphs 1 – 198.

200.     Glenn S. Martin Jr., Ernie Elder and Bryan Elder did take possession of a detachable trailer, tractor, and a drop deck trailer, and 40 foot trailer that belonged to the receivership.

201.     This actual and exclusive possession of the a detachable trailer, tractor, and a drop deck trailer, and 40 foot trailer interfered with the receivership's lawful right to the International 1206 and constituted a trespass to personalty.

202.     Further, as Ernie Elder and Bryan Elder were employees and acting in their course and scope of employees of People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc. at the time the trespass was made, People's Bank and Trust of Pickett County, Inc. and / or People's Bank and Trust of Clinton County, Inc., is vicariously liable for their employees actions.

## Count 16: Fraudulent Conveyance

203.     The receiver incorporates by reference paragraphs 1 – 202.

204.     The transfer between the Glenn S. Martin Jr. and Bob Martin of the drop deck trailer was made with the actual intent to hinder, delay, or defraud the creditors of Glenn S. Martin, Jr.

205.     In the alternative, the transfer between Glenn S. Martin Jr. and Bob Martin was made without Glenn S. Martin, Jr. receiving adequate value in exchange for such transfer, and the debtors intended to incur, or believed or reasonably should have believed that the debtors would incur, debts beyond the debtors' ability to pay as they became due. Bob Martin is an insider of Glenn S. Martin, Jr.

206.    This transfer is a violation of the Tennessee Uniform Fraudulent Conveyance Act pursuant to Tenn. Code Ann. 66-3-301 et. seq., and may be avoided pursuant to Tenn. Code Ann. 66-3-308.

### Count 17: Conversion

207.    The receiver incorporates by reference paragraphs 1 – 206.

208.    Glenn S. Martin, Jr., Mike Hagie, and Bob Martin did appropriate the following pieces of personal property that belonged to the receivership:

    a.    Model 9170 S/N JCB0001957

    b.    Model 9150 S/N JCB0006715

    c.    IH 780 Offset Disc 12ft, S/N UO14570

    d.    IH 770 Offset Disc 16ft, S/N UO21152

209.    The appropriation was an intentional exercise of dominion over the assets of the receivership, and was in defiance of the receivership's true rights to the assets in question.

### Count 18: Trespass to Personalty

210.    The receiver incorporates by reference paragraphs 1 – 209.

211.    Glenn S. Martin Jr., Ernie Elder and Bryan Elder did take possession the following pieces of personal property that belonged to the receivership:

    a.    Model 9170 S/N JCB0001957

    b.    Model 9150 S/N JCB0006715

    c.    IH 780 Offset Disc 12ft, S/N UO14570

    d.    IH 770 Offset Disc 16ft, S/N UO21152

212.    This actual and exclusive possession of the above mentioned property interfered with the receivership's lawful right to assets and constituted a trespass to personalty.

### Count 19: Conspiracy

213.    The receiver incorporates by reference paragraphs 1 – 212.

214.    Crystal Honeycutt, Sean Martin, Ernie Elder, Bryan Elder d/b/a Elder Cattle Farm and / or Elder Boy Farms, Peoples Bank and Trust of Pickett County, Inc., & Peoples Bank and

Trust of Clinton County Inc., Ernie Elder d/b/a Elder Cattle Farm and / or Elder Boy Farms, Mike Gray, Ken Nelson, Don Hodge, Bob Martin, Mike Hagie and Glenn S. Martin Jr. did engage in a common design to accomplish by concerted action the unlawful purpose of hiding, converting, and otherwise attempting to frustrate the receiver's attempt to locate and sell non-exempt assets of Glenn S. Martin, Jr. for the benefit of the United States.

215.    The named defendants to this action all engaged in overt acts, as discussed *supra*, to further the conspiracy to hide, convert, or frustrate the receiver's attempts to locate and sell non-exempt assets of Glenn S. Martin, Jr. for the benefit of the United States.

216.    The receivership has been injured in that it has been unable to sell for the benefit of the United States the non-exempt assets of Martin that are discussed *supra*. Furthermore, the receiver has incurred substantial costs and attorney fees during his over three year investigation of Glenn S. Martin Jr's activities.

217.    The receiver specifically incorporates by reference the torts identified above in Counts 1-18 as the underlying predicate tort(s) that were committed pursuant to the conspiracy.

218.    The receiver also believes that the conspiracy is continuing and on-going.

## VI. Conclusion

**WHEREFORE**, the Receiver, Richard F. Ray, respectfully requests the following relief from this court:

1.    For process to issue against Crystal Honeycutt, Sean Martin, Ernie Elder, Bryan Elder d/b/a Elder Cattle Farm, Peoples Bank and Trust of Pickett County, Inc., & Peoples Bank and Trust of Clinton County, Inc., Ernie Elder d/b/a Elder Cattle Farm, Mike Gray, Ken Nelson, Don Hodge, Bob Martin, Mike Hagie and Glenn S. Martin Jr.

2.    Entry of Order requiring all of the named Defendants to disgorge any converted property still in their possession;

3.      Entry of an Order avoiding the fraudulent conveyance of the drop deck trailer to Bob Martin for the benefit of the receivership;

4.      Entry of an Order in favor of the receivership not to exceed $950,000.00 representing the value of the converted, damaged, or destroyed assets; reasonable rental value of trespassed items, and punitive damages. The receiver also requests that any such judgement be joint and severable amongst all defendants, as the tortious acts were all in furtherance of a civil conspiracy.

5.      Providing such further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ Ryan E. Jarrard*
Ryan E. Jarrard,
BPR No. 024525
Attorney for Richard F. Ray, Receiver
**QUIST, CONE & FITZPATRICK, PLLC**
2121 First Tennessee Plaza
800 South Gay Street
Knoxville, TN 37929-2121
(865) 524-1873 ext. 232
rej@qcflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Claim has been served by operation of the Court's ECF System on or about March 8, 2016 as indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system. All Defendants in this complaint will be served pursuant to the Federal Rules of Civil Procedure.

United States Trustee
VIA ECF

*/s/ Ryan E. Jarrard* _____
ATTORNEY